IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARTHA LIDIA COTOC YAC DE YAC**, | Case No. 3:25-cv-2320-SI |
| Petitioner, | Agency No. A220-500-973 |
| v. | **ORDER** |
| **LAURA HERMOSILLO**, Seattle Field Office Director, Immigration and Customs Enforcement and Removal Operations; **TODD LYONS**, Acting Director of Immigration Customs Enforcement; **KRISTI NOEM**, in her official capacity as Secretary, U.S. Department of Homeland Security; **PAMELA BONDI**, Attorney General of the United States; **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**; and **U.S. DEPARTMENT OF HOMELAND SECURITY**, | |
| Respondents. | |

**Michael H. Simon, District Judge.**

Petitioner Martha Lidia Cotoc Yac de Yac is a citizen of Guatemala. She entered the United States in 2021, was detained and released, and placed in removal proceedings. On January 19, 2022, she filed an application for asylum, which remains pending. She was issued a work permit based on her asylum application that is valid through March 4, 2030. On March 16, 2023, Petitioner's removal proceedings were dismissed on the joint motion of Petitioner and the

PAGE 1 – ORDER

Office of Chief Counsel. On May 14, 2025, Petitioner filed for a U-visa after she was the victim of a felony assault. Petitioner has two children and has never committed a crime.

On December 12, 2025, while driving to work, Petitioner's vehicle was surrounded by cars containing officers stating they were from U.S. Immigration and Customs Enforcement. Petitioner asked that they contact her attorney, but no one did. Petitioner was arrested and detained.

Petitioner has filed a Petition for Writ of Habeas Corpus. ECF 1. She alleges that Respondents have violated the Administrative Procedure Act ("APA") and her Fifth Amendment Due Process rights by revoking her release and detaining her without any due process and without complying with the INA and its governing statutes. She also has filed a Motion for Temporary Restraining Order, ECF 2, requesting that the Court order: (1) that she not be removed from the District of Oregon, or Washington state if she has already been relocated to Washington, without notice to and approval of the Court; and (2) Respondents to show cause in three days why Petitioner should not be released.

## STANDARDS

### A. Temporary Restraining Order

In deciding whether to grant a motion for temporary restraining order ("TRO"), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must demonstrate that she is likely to succeed on the merits, irreparable harm in the absence of preliminary relief, that the balance of equities tips in her favor, and that an injunction is in the public interest." *Bates v. Pakseresht*, 146 F.4th 772, 783 (9th Cir. 2025) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555

U.S. 7, 29 (2008)). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021).

A preliminary injunction also "may issue where 'serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor' if the plaintiff 'also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'" *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 844 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit has a "'sliding scale' approach, in which 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Id.* (quoting *All. for the Wild Rockies*, 632 F.3d at 1131). In addition, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Entmt. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).

**B.  All Writs Act**

Under the All Writs Act, 28 U.S.C. § 1651, the Court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Even if the Court's jurisdiction over Petitioner's claim may be subject to dispute by Respondents, which has not yet been determined, "[a] federal court has the power under the All Writs Act to issue injunctive orders in a case even before the court's jurisdiction has been established." *See ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978); *see also Belbacha v. Bush*, 520 F.3d 452, 455-56 (D.C. Cir. 2008) ("If a case presents a 'substantial' jurisdictional question, then under the All Writs Act, 28 U.S.C. § 1651, a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction."). Accordingly, the Court

may "issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to exercise it." *See ITT Cmty. Dev.*, 569 F.2d at 1359 n.19.

## DISCUSSION

### A. All Writs Act Injunction

If Petitioner were transferred out of the District of Oregon, it could potentially create jurisdictional problems. Thus, the Court finds that it is necessary in aid of its jurisdiction that Petitioner not be transferred out of the District of Oregon or deported, at least until the parties have litigated the merits of Petitioner's Petition.[1]

### B. TRO

#### 1. Success on the Merits

The Court finds that Petitioner meets the elements for a TRO. She is likely to succeed on the merits that Respondents' revocation of Petitioner's release and her re-detention without any due process violates the Fifth Amendment. Courts routinely find that once a noncitizen has been

---

[1] Courts around the country exercise their authority under the All Writs Act to maintain their jurisdiction over pending immigration matters by preserving the status quo. *See, e.g.*, *J.A.V. v. Trump*, 780 F. Supp. 3d 705, 708 (S.D. Tex. Apr. 24, 2025) (enjoining respondents under the All Writs Act from "transferring, relocating, deporting, or removing" any petitioner outside of the Southern District of Texas because "maintaining the status quo is required to afford the Court the ability to consider the request for a preliminary injunction and other forms of relief . . . and to prevent the immediate and irreparable injury that may occur with the immediate removal of any [petitioner]"); *Du v. U.S. Dep't of Homeland Sec.*, 2025 WL 1317944, at *1-2 (D. Conn. Apr. 24, 2025) (enjoining defendants from removing and deporting any plaintiffs from the District of Connecticut in order to preserve the status quo and maintain the court's jurisdiction over the case pending ruling on the motion); *Doe v. Bondi*, 2025 WL 1870979, at *1-2 (S.D. Cal. June 11, 2025) (explaining that "[f]ederal courts retain jurisdiction to preserve the status quo while determining whether [they have] subject matter jurisdiction over a case and while a petition is pending resolution from the court" and finding that "a limited-duration stay to maintain the *status quo* is appropriate because it will allow the Court to hold a hearing and provide a reasoned decision to the request at hand"); *Batooie v. Ceja*, 2025 WL 1836695, at *2 (D. Colo. July 3, 2025) (enjoining defendants from removing the petitioner from the District of Colorado pursuant to the All Writs Act and Rule 65(b) of the Federal Rules of Civil Procedure in order to preserve the court's jurisdiction); *E-C-R- v. Noem*, 2025 WL 2300543, at *1-2 (D. Or. July 16, 2025) (enjoining the same with respect to a plaintiff from the District of Oregon).

released, that creates a liberty interest in the release that triggers due process protections. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Morales-Flores v. Lyons*, 2025 WL 3552841, at *4 (E.D. Cal. Dec. 11, 2025) ("Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." (cleaned up)); *Garcia Mariagua v. Chestnut*, 2025 WL 3551700, at *3 (E.D. Cal. Dec. 11, 2025) ("Petitioner has a liberty interest in her continued freedom."); *Mayo v. Semaia*, 2025 WL 3496774, at *3 (C.D. Cal. Dec. 5, 2025) ("In practice, the DHS re-arrests individuals only after a 'material' change in circumstances."); *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody.").

To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1972)]." *R.D.T.M. v. Wofford*, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025). Petitioner has a job, has two kids—including one child born in the United States—and has developed "enduring attachments of normal life" as described in *Morrissey*.

   2. **Irreparable Harm**

Petitioner also has shown irreparable harm because she has shown a likely violation of her constitutional rights and because she currently is in detention. The loss of her liberty and her ability to parent and support her children is irreparable. The Ninth Circuit has acknowledged the

PAGE 5 – ORDER

"irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995.

### 3. Balance of the Equities and Public Interest

The balance of the equities and public interest also tips sharply in Petitioner's favor. "[I]n addition to the potential hardships facing [Petitioner] in the absence of an injunction," the court may consider "the indirect hardship to their friends and family members." *Hernandez*, 872 F.3d at 996 (quoting *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)). Petitioner's children will suffer while she is in detention. On the other hand, "[a] temporary restraining order also inflicts minimal harm to the government. Though Respondents have an interest in enforcing immigration laws, they have no interest in erroneously enforcing the wrong law, as they have done here." *Garcia Mariagua*, 2025 WL 3551700, at *4.

### 4. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, *if any*," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original). Because the "the [government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

**CONCLUSION**

The Court GRANTS IN PART *ex parte* Petitioner's Motion for Temporary Restraining Order, ECF 2. The Court ORDERS Respondents not to transfer Petitioner from the District of Oregon, or if she already has been transferred to Washington state, then not to transfer Petitioner from Washington state, absent further order of this Court, for fourteen days from the date of this Order. The Court FURTHER ORDERS Respondents to SHOW CAUSE IN WRITING in five calendar days (by December 17, 2025), why Petitioner's Petition should not be granted.

**IT IS SO ORDERED.**

DATED this 12th day of December, 2025 at 3:50 p.m.

_____
Michael H. Simon
United States District Judge